IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3: 19-CV-661-MOC-DCK

| J. ALEXANDER HEROY, as Guardian Ad Litem for C.S., a minor, THOMAS P. PANSA, and wife PATRICIA D. PANSA<br><br>*Plaintiffs,*<br><br>v.<br><br>GASTON COUNTY BOARD OF EDUCATION and NICHOLAS PATTERSON, in his individual capacity,<br><br>*Defendants.* | **PLAINTIFFS' FIRST AMENDED COMPLAINT (JURY TRIAL DEMANDED)** |
|---|---|

NOW COME THE PLAINTIFFS and, with leave of Court, amend their Complaint and assert amended claims against Defendants as follows:

## PARTIES

1. Plaintiff, J. Alexander Heroy has been duly appointed as the Guardian *ad Litem* for C.S. ("C.S." or the "minor Plaintiff"), a minor. J. Alexander Heroy, Guardian *ad Litem*, is an adult citizen and resident of Mecklenburg County, North Carolina, who brings this action in his representative capacity on behalf of C.S., a minor and student at Stuart Cramer High School (hereinafter "SCH") located at 101 Lakewood Road, Belmont, NC 28012.

2. Plaintiffs Thomas Pansa and Patricia Pansa are citizens and residents of the state of North Carolina and the adoptive parents of C.S..

3. Defendant Gaston County Board of Education (hereinafter "GCB"), is a governmental agency/entity existing under the laws of the state of North Carolina and has facilities and schools located throughout Gaston County, including SCH. At all times herein mentioned in this lawsuit, GCB acted and carried on its business by and through its agents, servants, and/or employees at its various locations, including SCH.

4. Defendant Nicholas Patterson, sued in his individual capacity, upon information and belief, is a citizen and resident of North Carolina and a public employee of GCB.

## NATURE OF ACTION

5. This is an action against the aforementioned Defendants for compensatory damages for the deliberate actions and indifference, negligence, failure to protect, and other claims against

Defendants GCB and Patterson due to each Defendant's direct personal involvement and/or actual knowledge of the wrongs enumerated in this Complaint regarding a brutal physical assault and abuse of Plaintiff C.S. by other students.

## JURISDICTION

6. The Superior Court of Gaston County, North Carolina has jurisdiction over the parties and the subject matter of this action.

7. The venue is proper.

8. Plaintiffs have been damaged in an amount exceeding $25,000.00.

## FACTUAL ALLEGATIONS

9. On or about October 16th, 2018, the minor Plaintiff was a student at Stuart Cramer High School.

10. Prior to the relevant events, the minor Plaintiff and his family had been trying to arrange a meeting with SCH to qualify him for special education services, including an Individualized Education Plan ("IEP") because C.S. had already been formally diagnosed as having a disability under the Individuals with Disabilities Education Act ("IDEA"). At all relevant times, SCH had failed to accommodate C.S. for his disability through an IEP, though they had prior knowledge of his disability.

11. Prior to the relevant events, Patricia Pansa had obtained an IEP for C.S., which had been implemented in five (5) other schools that C.S. had previously attended.

12. Upon information and belief, prior to the beginning of the 2018-2019 school year, C.S.'s records had been transferred from William Amos Hough High School in Mecklenburg County, his previous school, to SCH. These records contained information about his IEP.

13. Before transferring to SCH, C.S. had transferred schools four (4) times, and each time his IEP had followed him successfully and without issue, as follows:

(a) Patricia Pansa would speak with a counselor;
(b) Patricia Pansa would obtain a class schedule for C.S.;
(c) Patricia Pansa would meet with an IEP representative via the counselor to discuss the schedule and other needs specific to implementing the IEP.

14. On or about July 8, 2018, Patricia Pansa communicated with Terri Surbeck, Director of Student Services at Gaston County Schools, via email to request a meeting with a counselor, the first step in the process of implementing the IEP for Plaintiff.

15. On or about August 14, 2018, Patricia Pansa went to SCH to request C.S.'s IEP schedule, but was denied a meeting.

16. On or about August 23, 2018, Patricia Pansa, attended an open house event at SCH, and told a guidance counselor about C.S.'s IEP, but SCH stated it was "too late to change classes."

17. Upon information and belief, none of C.S.'s teachers knew of his IEP when classes began on August 27, 2018.

18. Despite Patricia Pansa's persistent requests for an IEP meeting, she was not granted one until an incident occurred in C.S.'s biology class which required Pansa's intervention.

19. On or about September 10th, 2018, in an email correspondence addressing C.S.'s difficulties in biology, Patricia Pansa told C.S.'s teacher, Bridget Matzke about his IEP and specific special needs.

20. Upon information and belief, on or about September 19th, 2018, Patricia Pansa met with Bridget Matzke in person, and Matzke agreed to help facilitate an IEP for C.S.

21. On or about October 11th, 2018 Patricia Pansa was informed via email from Anissa Mobley (EC teacher) of an IEP meeting for C.S. scheduled for October 25th, 2018.

22. In the months preceding the relevant events, C.S. participated in a welding class at SCH, which, upon information and belief, was taught by Defendant Nicholas Patterson.

23. One of the other students in C.S.'s welding class was K.K. Upon information and belief, prior to the attack described below, Defendant Patterson and other SCH employees knew about the dangerous and violent propensities of K.K., and that K.K. had been involved in several other attacks or violent misbehavior at SCH. Upon information and belief, K.K. had been kicked off the SCH football team in early fall of 2018 as a result of violent and aggressive behavior.

24. On or about October 16th, 2018, C.S. was viciously attacked in the locker room of SCH during school hours. The attack was recorded and broadcast within minutes of taking place and subsequently became accessible for all to witness on several social media platforms.

25. On or about Monday, October 15th, 2018 (one day prior to the attack), C.S. and K.K. were in welding class when K.K. loudly threatened to beat up C.S. Among other threats, K.K. threatened to put C.S.'s head in the grinder used in the welding shop. Patterson heard K.K.'s threats. Immediately after making the threats against C.S., K.K. walked out of the class without permission, and was absent from the remainder of class.

26. Prior to the attack on C.S., everyone in the class, including but not limited to the welding teacher, Patterson, overheard and/or knew that K.K. was threatening to beat up C.S.

27. At the beginning of welding class on October 16, 2018, the very next day, Patterson informed K.K. that he would not be permitted to go back into the welding shop that day. Patterson

did not inform any other member of SCH about the threats made against C.S., that K.K. left class without permission, or that he was separating C.S. and K.K. during class on October 16, 2018. Another student and friend of K.K., D.L., stated that he would not go into the welding area either, and remained with K.K. K.K. and D.L. spent the remainder of class huddled closely together, presumably plotting their attack on C.S.

28. Upon information and belief, K.K. prearranged for the attack to occur in the locker rooms immediately adjacent to the welding area.

29. Towards the end of class, Patterson instructed all students to go to the locker room and change. Initially, Patterson did not allow K.K. and D.L. into the locker room due to the threats against C.S.; however, Patterson allowed K.K. and D.L. to enter the locker room only moments after C.S. went in.

30. Upon information and belief, Patterson created and/or increased the risk of the dangerous attack by instructing C.S. to go to the locker room following welding class.

31. Patterson made no efforts to monitor K.K., maintain a safe environment, or protect C.S.

32. In the unsupervised locker room, K.K. and D.L. violently, viciously and repeatedly hit C.S. in the head, threw him to the ground, and punched and kicked all areas of C.S.'s body, which caused C.S. to suffer a concussion, swelling of the head, and extremely bruised ribs.

33. Upon information and belief, Patterson knew about K.K.'s and D.L.'s intentions to assault and batter C.S. that day, knew about K.K.'s violent past and recent dismissal from the football team, and instructed C.S., and others, to go to the unsupervised locker room following class, where K.K., and others, violently attacked him in direct violation of Policy Code 4200: School Safety from the *Gaston County Schools Policy Handbook.*

34. Significantly, and upon information and belief, Patterson created or increased the risk of the dangerous situation by instructing C.S. to go to the locker room unsupervised, despite knowing K.K. had expressed his intent to attack C.S. Indeed, K.K.'s expressed intent and purpose of going into the locker room was to attack C.S. Despite having that knowledge, Patterson remained in the classroom.

35. C.S. suffered a severe brain injury in the altercation.

36. There was no timely intervention by any faculty members of SCH.

37. Instead, there was enough time for: (a) K.K.'s and D.L.'s attack on C.S. to continue, uninterrupted, for several minutes, (b) the other students to post the attack on social media, and (c) for all the welding students to return to the class, except for C.S., before any faculty checked on him. During this time, C.S. was laying in the locker room bleeding.

38. Patterson checked on C.S. only after the bell rung and K.K., D.L., and the rest of the students returned to the classroom.

39. Almost one year after C.S. endured this horrific experience, video of the attack remains easily accessible by a quick "Google" search via a query like "Stuart Cramer attack."

40. Upon information and belief, the students responsible for capturing the video and airing it were never named or punished by the school.

41. The tragic event that occurred in the SCH locker room and the subsequent responses, or lack thereof, from SCH personnel violated the following codes in the *Gaston County Schools Policy Handbook*:

> Policy Code: 4200 School Safety
> Policy Code: 4301: Authority of School Personnel
> Policy Code: 4310 Integrity and Civility
> Policy Code: 4318 Use of Wireless Communication Devices
> Policy Code: 4331 Assaults, Threats and Harassment
> Policy Code: 4333 Weapons, Bomb Threats, Terrorist Threats and Clear Threats
> Policy Code: 4381 Student Code of Conduct
> Policy Code: 4341 Parental Involvement in Student Behavior Issues

42. Additionally, Patterson failed to uphold his staff responsibilities as outlined in Board Policy Code: 7300, which requires that teachers:

> a) Be familiar with, support, comply with and, when appropriate, enforce board policies, administrative procedures, school rules and applicable laws; and
>
> b) Attend to the safety and welfare of students, including the need to provide appropriate supervision of students.

43. In addition, Policy Code(s) 4040/7210 expressly prohibit bullying.

44. After the attack, C.S. was treated in the Emergency Room at CaroMont Regional Medical for his injuries, and he has not returned to school since October 2018.

45. As a direct result of the preventable acts of his assailants, C.S. has battled with his mental and emotional health. On or about February 19th, 2019, C.S. was rushed via ambulance to CaroMont Regional Medical Center after attempting suicide. He was admitted to Levine Children's Hospital February 21st, 2019 for suicidal precautions. He remained there for 8 days.

46. Prior to the attack, C.S. had a "normal" life plan. He was taking courses that would have enabled him to attend a 4-year college and was interested in sports. He was also interested in welding as a potential career.

47. Today, as direct result of the attack on October 16th, 2018, C.S. suffers from debilitating migraines 3 to 4 days per week. He suffers from acute anxiety, has a significant "tick," and is paranoid in public spaces, among other conditions associated with his traumatic brain injury.

48. The psychological and neurological damages of the assault are still being assessed and treated.

## GOVERNMENTAL IMMUNITY IS WAIVED

49. N.C. General Statute §115C-42 states: "Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort."

50. Upon information and belief, GCB has waived governmental immunity that could otherwise apply to the claims in this case. Upon information and belief, GCB has purchased liability insurance, either by contract with an insurance company or other qualified insurer as determined by the Department of Insurance, which provides coverage—including coverage to its officers and employees—for the claims raised in this action. GCB has thereby waived its sovereign or governmental immunity on these claims by purchasing insurance pursuant to N.C. General Statute § 115C-42.

51. Alternatively, should the Court determine that GCB is entitled to governmental immunity, which Plaintiffs deny, then Plaintiffs will have no adequate remedy at law and assert violations of Article I, §§ 15 and 19 and Article IX, § 1 of the North Carolina Constitution.

52. Further, these claims are being made against Defendant Patterson in his individual capacity as a public employee.

## FIRST CAUSE OF ACTION
**(Negligence/Gross Negligence – All Defendants)**

53. Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

54. The Defendants owed a duty to the Plaintiff to provide protection from unlawful discrimination and bullying at school, to provide a safe school environment, and to accommodate disabilities.

55. The Defendants breached their duties in the following ways:

(a) Defendants failed to accommodate Plaintiff's disability;

(b) Defendants were deliberately indifferent to the needs and special needs of Plaintiff;

(c) Defendants were deliberately indifferent to the violent threats of a student with a known propensity for violence;

(d) Defendants failed to take reasonable protective action in response to the violent threat;

(e) Defendants failed to protect Plaintiff by ignoring the threat, failing to supervise the potential carrying out of such a threat, and failing to intervene to stop the violence or provide medical aid to C.S.;

(f) Defendants failed to provide medical care to C.S. in a timely manner;

(g) Defendants violated policy codes 4200, 4301, 4310, 4318, 4331, 4333, 4381, 4341, 7300, and 4040/7210 of the *Gaston County Schools Policy Handbook;*

(h) Defendants failed to keep K.K. away from C.S.;

(i) Defendants failed to remove K.K. or adequately discipline K.K. despite receiving threats from K.K. to seriously injure another student;

(j) (k) And any other failures that may be discovered throughout the pendency of this matter.

56. Upon information and belief, Defendant GCB was negligent in the following additional ways:

(a) Failed to train employees regarding acceptable practices;

(b) Failed to properly supervise the responsibilities of its employees on the premises;

(c) Failed to properly train employees on identifying and addressing violent threats and bullying;

(d) Failed to have proper procedures to intervene in bullying situations;

(e) Failed to properly train employees on the *Gaston County Schools Policy Handbook*;

(f) Failed to properly train employees on identifying assaults in progress; and

(g) Failed to properly reprimand, suspend or terminate an employee that performed deliberately indifferent acts to the detriment of Plaintiff;

(i) Failed to identify a student with a disability and provide him with an IEP; and

(h) Any other failures that may be discovered throughout the pendency of this matter.

57. The acts described above were willful and wanton, done with reckless indifference or in total disregard for the rights and safety of others, including the Plaintiff.

58. As a result of the gross negligence and negligence of the Defendants, the Plaintiff is entitled to a recovery of damages in an amount in excess of $25,000.00.

**SECOND CAUSE OF ACTION**
**[Negligent Hiring, Negligent Supervision, Negligent Retention – Defendant GCB]**

59. The Plaintiffs incorporate by reference the allegations contained in all of the prior paragraphs.

60. Patterson was an employee of GCB at all times relevant to this Complaint.

61. GCB had a duty to exercise ordinary and reasonable care in the screening, hiring, training, retention, and supervision of its employees, including Patterson.

62. GCB breached such duties.

63. Specifically, as alleged herein, GCB failed to properly train and supervise Patterson with respect to how to deal with threats from other students, how to keep students safe from violent physical assaults, how to protect and safeguard students with disabilities, and how to properly report threats of violence and take other preventive measures.

64. GCB's actions and inactions were grossly negligent and/or committed in reckless disregard for C.S.'s rights.

65. As a direct and proximate result of the Defendant's (GCB) negligent hiring, supervision, and retention, the Plaintiffs have been damaged in excess of $25,000.00.

**THIRD CAUSE OF ACTION**
**[U.S. Constitutional Violations – 42 U.S.C. § 1983 – Defendant GCB and Defendant Patterson, in his individual capacity]**

66. The Plaintiffs incorporate by reference the allegations contained in all of the prior paragraphs.

67. Defendant Patterson is liable in his individual capacity as an employee of the Defendant GCB.

68. This cause of action is brought against Defendants GCB and Patterson, in his individual capacity, for deliberate actions and indifference to the specific threat of harm to Plaintiff, and the critical medical needs of Plaintiff, as an individual with a documented disability. Defendants GCB and Patterson failed to provide any accommodation for Plaintiff's disability. Additionally, Defendants GCB and Patterson, by and through its employees, facilitated and ignored specific threats of harm to the Plaintiff, and placed Plaintiff in close contact with his assailants, allowing him to be verbally threatened and physically assaulted without intervention or consideration of his disability.

69. Defendant Patterson was deliberately indifferent to the minor Plaintiff in the following manner:

(a) He knew about an impending attack on the minor Plaintiff, who had a disability, and deliberately chose to do nothing about the threat of harm to the Plaintiff;

(b) He knew, or should have known, based on the facts and circumstances from that day and the day prior, that K.K. was going into the locker room to assault C.S., and purposefully chose to remain in the classroom and let the boys go into the locker room unsupervised;

(c) He failed to protect the minor Plaintiff after a known danger was presented;

(d) He purposefully and/or deliberately failed to monitor his classroom to the detriment of the minor Plaintiff;

(e) Any other failures that may become known through the discovery of this matter.

70. At all times relevant hereto, GCB and Patterson were acting under the color of state law.

71. GCB and Patterson knew, prior to the attack, that Plaintiff had a diagnosed and documented disability, yet made no effort to provide accommodation, leaving him vulnerable to discrimination and bullying.

72. Despite having knowledge of Plaintiff's disability, and therefore his being a likely target for bullying, GCB created a situation in which C.S. was savagely beaten. GCB, additionally, was deliberately indifferent to Plaintiff's special needs in ignoring the well-known fact that bullies choose victims who 1) are different from them; and 2) are not perceived as capable of fighting back due to being emotionally or physically weak. Plaintiff's mental disability made him a prime target for verbal and physical bullying, yet Patterson and GCB placed him in a regular class with no accommodation for his disability and required him to use unsupervised areas to which his assailants had easy access.

73. Despite having knowledge of a verbal threat of violence issued against Plaintiff by a student with a known propensity for violent behavior, the Defendants, including Patterson, created and/or greatly increased the risk of harm to Plaintiff.

74. The Defendants knew or should have known that placing Plaintiff in a class with no accommodations for his disability and requiring him to use an unsupervised space to which his assailants were permitted easy access would necessarily have contact was likely to result in physical and/or psychological harm to Plaintiff.

75. GCB and Patterson created the danger that Plaintiff would be physically assaulted by K.K., or at the very least significantly increased the risk of that danger, and did so through affirmative acts.

76. As a direct and proximate result of GCB and Patterson's deliberate indifference described in more detail above, the minor Plaintiff suffered severe and permanent physical and psychological injuries and was forced to endure extreme pain, suffering, and emotional distress and mental anguish together with a total deprivation of his rights guaranteed him by the Constitution of the United States of America, including but not limited to, his substantive due process rights under the Fourteenth Amendment to bodily integrity and to be free from state-created danger.

## FOURTH CAUSE OF ACTION
## [Claim for Medical Expenses – All Defendants]

77. Plaintiffs incorporate by reference the allegations contained in all of the prior paragraphs.

78. Plaintiffs have incurred and will continue to incur medical expenses as a result of the above described incident.

79. As such, the Plaintiffs have been damaged in amount to be determined by a jury for medical expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray for judgment against the Defendants as follows:

1) That the Plaintiffs have and recover damages from GCB and Patterson, in his individual capacity, jointly and severally, in an amount to be determined at trial, for their negligence, gross negligence, and medical expenses;

2) That Plaintiffs have and recover damages from Defendant GCB in an amount to be determined at trial, for its negligent hiring and supervision;

3) That Plaintiffs have and recover damages, including attorney fees, from Defendant GCB and Defendant Patterson, in his individual capacity, jointly and severally, in an amount to be determined at trial pursuant to 42 U.S.C. § 1983 for its violation of the United States Constitution;

4) That the Defendants be taxed with the costs of this action, including reasonable attorney fees as allowed by law, expenses, prejudgment interest, etc.;

5) That all issues so triable, be tried to a jury; and

6) For any other relief this Court deems just and proper under the circumstances.

Respectfully submitted this the 28th day of February, 2020.

**DeVORE, ACTON & STAFFORD, P.A.**

/s/ F. William DeVore, IV
F. William DeVore, IV, N.C. State Bar No. 39633
wdevore@devact.com
438 Queens Road
Charlotte, NC 28207
Telephone: (704) 377-5242
Facsimile: (704) 332-2825
*Attorney for Plaintiffs*

**JAMES, McELROY & DIEHL, P.A.**
J. Alexander Heroy, NC Bar No. 39752
Jennifer M. Houti, NC Bar No. 45442
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
E-mail: aheroy@jmdlaw.com
jhouti@jmdlaw.com
*Guardian ad Litem for C.S., a minor*

**CERTIFICATE OF SERVICE**

The undersigned certified that the foregoing **PLAINTIFFS' FIRST AMENDED COMPLAINT** has this date been electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Daniel W. Clark
Deborah R. Stanger
Tharrington Smith, LLP
P.O. Box 1151
Raleigh, NC 27602-1151
dclark@tharringtonsmith.com
dstagner@tharringtonsmith.com
*Attorneys for Defendants*

This the 28th day of February, 2020.

**DeVORE, ACTON & STAFFORD, P.A.**

/s/ F. William DeVore, IV
F. William DeVore, IV, N.C. State Bar No. 39633
wdevore@devact.com
438 Queens Road
Charlotte, NC 28207
Telephone: (704) 377-5242
Facsimile: (704) 332-2825
*Attorney for Plaintiffs*

**JAMES, McELROY & DIEHL, P.A.**
J. Alexander Heroy, NC Bar No. 39752
Jennifer M. Houti, NC Bar No. 45442
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
E-mail: aheroy@jmdlaw.com
jhouti@jmdlaw.com
*Guardian ad Litem for C.S., a minor*